THOMAS R. TEARE AND MATTHEW THOMAS v. FRANK C. CAIN ET AL.

PAROL EVIDENCE IS ADMISSIBLE TO SHOW INTEREST OF ONE PARTNER IN LAND BOUGHT IN FIRM NAME.

> Where a partnership existed between three persons, who by contract in writing purchased real estate, signing "Teare, Thomas & Cain," instead of using the partnership name, parol evidence may be introduced to show that the land was purchased with the funds of the partnership, and for its use and ownership, and that Cain, who claimed to own a third therein, having but a sixth interest in the firm, had but a sixth interest in the premises.

On Error to the Court of Common Pleas of Cuyahoga county.

BALDWIN, J. (orally).

This case is about a land contract dated in October, 1890, for the consideration of $6,000.

The question is whether Cain is entitled to 1-3 of that, or whether he is entitled to 1-6; and that question is to be determined by the relations of this land to a certain partnership in which Cain had an interest of one sixth.

There was a partnership entered into on the first day of October, 1890, called the River Machine & Boiler Works, entered into by articles of agreement, and making the partnership by that name, and signed by Thomas R. Teare, M. Thomas, and F. C. Cain. There was another concern called the River Boiler Works, in which the River Machine and Boiler Works were interested, with a man named Hirsch. Some little confusion seemed to arise in the testimony about these firms; and in fact, in the paper which I hold in my hand, Hirsch is put down as one of the partners of the firm called the River Machine and Boiler Works. But there is no doubt about the facts. Teare, Thomas & Cain had their partnership called the River Machine & Boiler Works, in which they were jointly engaged in the manufacture of machines; and they were also interested as a firm in the Boiler Works, in which alone Hirsch had an interest, the accounts being kept separately in the firm books of the River Machine & Boiler Works, and the money transactions going through the River Machine & Boiler Works.

This partnership was entered into October 1, 1890. By the terms of that contract Cain had one-sixth. He had the permission, if he chose within a limited time, on certain terms, to increase his said interest one-third. He never exercised that choice.

It is said that this contract running to Teare, Thomas & Cain is a contract in writing, the terms of which cannot be contradicted by any oral testimony. It is so common to have testimony introduced to show that land taken in the name of one partner, or of a man even who is not a partner, or of two partners, or of all the partners, was taken for the benefit of the firm, that I will not consume time in discussing the authorities. A partnership name is an improper one for a grantee, and the land should be taken in some other name than that of the partnership (Rammelsberg v. Mitchell, 29 O. S., 52); and oral testimony has been permitted practically in almost every case to show what were the circumstances under which the land was bought; who bought it; who paid for it, with whose funds, and for what it was going to be used. Any thing may be introduced showing that there is a trust on the part of the buyers of the land for the partnership.

The question is on the testimony before us, whether this was the contract of the firm, or whether it was the contract of Teare, Thomas & Cain, each individually. We have come to the conclusion, upon the testimony, that this was the property of the partnership of the River Machine & Boiler Works, for various reasons, some of which I will mention.

It appears that before this partnership was formed with Cain, there had been a talk with those who afterwards became partners, and Scott, the owner of the

land, about the purchase of the land; that the purchase was contemplated, and for the use of the firm. It is said that Cain went into the purchase as a speculation; that it was a cheap purchase, and it proved so. For, within a very short time after they bought the land for $6,000, they sold it for $15,000, the very large advance in prices inducing them to think they did not care to use it for the purposes intended.

There can be no doubt the purchase was contemplated before Cain went into the firm, and for the purposes of the firm. When they made the purchase it was contemplated to be used for the purposes of the firm, and so far as it was paid for in advance, it was paid out of the funds of the firm; none of it was paid with any private funds of any individual. It seems almost as if the use of the name of Teare, Thomas & Cain in the contract, instead of the full names of the individuals, would rather tend to show that it was a partnership transaction; and it is not claimed that there was between these three partners any other partnership than that which was ordinarily known under the name of the River Machine & Boiler Works. Taking the individuals rather than the firm-name was an exceedingly proper transaction.

It is said that it was contemplated, that there was a talk that there was rent to be paid for this land to Teare, Thomas & Cain; but it appears by the testimony of Cain that the talk was that rent was to be charged for the premises, not to the firm, the River Machine & Boiler Works; but rent was to be charged in favor of that firm and these three individuals, to the Boiler Works in which Hirsch was interested, who was not interested in the other. In short, that the land was to belong to the general firm; that is, the firm that was interested in all the business, and the special firm interested in a part of the business had one more partner. This theory is sustained by the statement made by Cain himself. The thought of a third may have run in his mind if, at the time at which he entered into that partnership contract, it was expressly stipulated he should have the option of having one-third instead of one-sixth. If he had exercised that option, the land being a partnership property, would have gone with the rest. On the 30th of April, 1891, he made a statement in order to obtain bank accommodations. It states that Teare, Thomas & Cain purchased this land. Then it speaks of "we." As this is a statement signed by the River Machine & Boiler Works alone, it would seem to mean the River Machine & Boiler Works, which was composed of these three individuals: Teare, Thomas and Cain. That statement says: "We have paid the amount of $1,500." And: "The above purchase was made because it is peculiarly adapted for our business, and we considered it much below market value."

Now it is said that there was some admission by Mr. Teare in regard to this, in conversation with a brother of Cain. The admission was not a very definite one, if one was made. It is said that in talking about the ability of the parties to pay his property he said: "If Thomas and I can pay $2,500 apiece, Cain can pay his share. But $2,500 a piece was more than one-third of $7,000, and it was less than a share belonging to them, provided it was at the rate of one-sixth to Cain.

If Cain is right, this was not a partnership transaction. Nor could it be said that Teare, in conversation with Cain's brother, where he made an admission with regard to matters inside of the firm as between the rights of the parties themselves, could make that admission so it would be binding upon Thomas.

We are of the opinion on all the evidence that the plaintiffs are entitled to a decree.

Henderson, Kline & Tolles, for plaintiffs.
James M. Jones, for defendant.